UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:14-CV-00086-GNS

MANUEL MINGS                                                                       PLAINTIFF

v.

WAL-MART STORES, INC.                                           DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Motion for Summary Judgment (DN 17) filed by Defendant Wal-Mart Stores East LP ("Wal-Mart")[1]. Because the time to file a response has passed, this matter is ripe for a decision. For the reasons outlined below, the motion is **GRANTED**.

    **I.**       **STATEMENT OF FACTS AND CLAIMS**

In 1981, Manuel Mings ("Mings") was hired by the Campbellsville Wal-Mart store where he worked until 1986 when he left following a disagreement with a manager. (Mings Dep. 44:2-3, Mar. 4, 2014, DN 16; Mings Dep. Ex. 2, DN 16-1). Later in 1986, Mings was rehired and continued to work for Wal-Mart until August 4, 2012. (Compl. ¶ 3, DN 1-2; Mings Dep. 44:20-25, 101:22-102:9). During his tenure with Wal-Mart, Mings held a number of positions including sales associate in sporting goods, support team, and department manager for the pets department. (Mings Dep. 47:10-21).

As part of its personnel policies and procedures, Wal-Mart has implemented a progressive discipline policy titled "Wal-Mart's Coaching for Improvement Policy" whereby

---

[1] Defendant was incorrectly identified as "Wal-Mart Stores, Inc." in the Complaint and court filings.

managers are able to notify employees if the employees' job performance is substandard. Wal-Mart's Coaching for Improvement Policy is intended to "provide instruction and assistance to [employees] if [their] job performance fails to meet the reasonable expectations and standards for all associates in the same or similar position." (Def.'s Mot. for Summ. J. Ex. 2). This progressive discipline policy begins with a "First Written coaching" where the employee is notified that his or her conduct does not meet Wal-Mart's expectations. (Def.'s Mot. for Summ. J. Ex. 2). Subsequent poor job performance may result in a "Second Written coaching," which limits the employee's eligibility for transfers and promotions, or a "Third Written coaching" at which point, in addition to second-level sanctions, the employee must meet with his or her manager to develop a plan to rectify any problems or concerns that exist. (Def.'s Mot. for Summ. J. Ex. 2). Finally, the policy explicitly states that if an employee's "unacceptable job performance or conduct warrants a level of coaching and [the employee has] already received a Third Written level of coaching within the 12 months immediately preceding the unacceptable job performance or conduct, [the employee] will be subject to termination." (Def.'s Mot. for Summ. J. Ex. 2). Thus, four instances of coaching in any twelve-month period are grounds for automatic termination. As a nearly 31-year employee of Wal-Mart, Mings was familiar with Wal-Mart's policies and acknowledged it was "always my understanding that if you got wrote [sic] up four times, that they'd let you go." (Mings Dep. 86: 1-3).

Company policy requires employees to take a 30-minute meal break before the beginning of the fifth hour of their shift. (Def.'s Mot. for Summ. J. Ex. 3). As described in that policy, failure to abide by the policy guidelines results in a coaching under the Wal-Mart Coaching for Improvement Policy. (Def.'s Mot. for Summ. J. Ex. 3). Furthermore, Wal-Mart enforces its Discrimination and Harassment Prevention Policy as part of its discipline program and any

2

violation of Wal-Mart's policy against harassment results in discipline under the Coaching for Improvement Policy. (Def.'s Mot. for Summ. J. Ex. 3). Mings acknowledges that he was aware of both of these policies and that a violation of either policy would result in coaching. (Mings Dep. 90:17-96:4).

While employed by Wal-Mart, Mings was coached on a number of occasions for conduct ranging from excessive absences and tardies, to failing to record a gun sale in violation of Wal-Mart's gun sale policy. (Def.'s Mot. for Summ. J. Ex. 5 at 2-3, DN 17-6). During his time as the pets department manager from 2008 to 2010, Mings was coached twice for failure to perform his job properly. (Def.'s Mot. for Summ. J. Ex. 5 at 1). Because he was aware that two more instances of coaching would result in termination, Mings voluntarily returned to sporting goods as a sales associate in March of 2010. (Mings Dep. 47:8-48:2).

On February 14, 2012, Mings was coached for violation of Wal-Mart's Breaks, Meal Period and Days of Rest Policy when he failed to take a 30-minute break during the first five hours of his shift. (Def.'s Mot. for Summ. J. Ex. 5 at 7). Mings admitted that he had worked in excess of five hours and that this conduct was against company policy. (Def.'s Mot. for Summ. J. Ex. 5 at 7; Mings Dep. 128:12-22). As previously discussed, the Breaks policy states that "[a]ssociates will be subject to disciplinary action for . . . missing meal periods, or taking meal periods that are too long, too short or untimely," and that a break or meal period offense "shall be addressed under the Coaching for Improvement Policy." (Def.'s Mot. for Summ. J. Ex. 3). Mings was coached again for violating the same policy on June 7, 2012. (Def.'s Mot. for Summ. J. Ex. 5 at 8). Again, Mings admitted that he had been in violation of the policy and was aware that it would result in coaching. (Mings Dep. 91:23-92:3, 130:2-5). Wal-Mart's Policy explicitly states that when an associate has multiple violations advancement to the next level of coaching will

3

occur, and if an active coaching already exists the next appropriate level should be given. (Def.'s Mot. for Summ. J. Ex. 3).

On July 16, 2012 Mings received a Third Written coaching for violation of Wal-Mart's zero-tolerance Discrimination and Harassment Prevention Policy after a female co-worker complained about Mings' inappropriate conduct. (Def.'s Mot. for Summ. J. Ex. 5 at 8). The co-worker had asked Mings to help her find merchandise in the store, and while Mings was helping her she mentioned that she had a boyfriend. (Mings Dep. 131:16-23). Mings admits that he responded that her boyfriend "didn't want to buy the car without driving it first." (Mings Dep. 131:24-132:1, 136:9-25).

Wal-Mart's harassment policy is a "zero tolerance" policy and defines prohibited harassment as "[v]erbal kidding, teasing, or joking; [m]aking offensive comments about an individual's status, appearance, or sexual activity . . . ." (Def.'s Mot. for Summ. J. 4). Furthermore, any report under this policy results in an investigation. (Def.'s Mot. for Summ. J. 4). "If an investigation reveals that an associate has violated [the harassment] policy (or any other policy) that associate will be subject to disciplinary action." (Def.'s Mot. for Summ. J. 4). Following the incident the female associate complained to management who determined, based on Mings' own admission, that he had violated Wal-Mart's sexual harassment policy. (Mings Dep. 144:12-145:1).

Finally, Mings received a fourth and final coaching on August 4, 2012. (Mings Dep. 102:3-103:1). Mings was found to be in violation of Wal-Mart's policy concerning the sale of firearms and firearm accessories when he failed to lock the stores handgun ammunition case. (Mings Dep. 103:16-104:11). Sales associates in sporting goods are required to maintain the sporting goods area in accordance with company policies and procedures as well as state and

federal laws. (Def.'s Mot. for Summ. J. Ex. 7, DN 17-8). Wal-Mart maintained a specific policy concerning the sale and storage of firearms and ammunition requiring associates to keep hand gun ammunition inaccessible to customers. (Def.'s Mot. for Summ. J. Ex. 7, DN 17-9). Mings acknowledged that he was aware of this policy, and that he left the ammunition case unlocked and unsecured after opening it to help a customer. (Mings Dep. 103:21-25, 107:5-7).

Following this fourth coaching within a twelve-month period Mings was terminated. (Mings Dep. 107:13-23). At the time of his termination Mings was 51 years old. (Mings Dep. 71:21-72:22, 102:3-23). On November 12, 2013 Mings filed suit in Taylor Circuit Court alleging age discrimination, claiming that he was discharged because of his age in violation of KRS 344.040, and that lawsuit was removed to this Court. (Compl. ¶ 5, DN 1-2; Notice of Removal, DN 1-1).

## II. STANDARD OF REVIEW

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of any material fact that would preclude entry of judgment for the moving party as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies its burden, the non-moving party must then produce specific evidence proving the existence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

*475 U.S. 574, 586 (1986)* (citation omitted). Rather, the non-moving party must present specific facts proving that a genuine factual issue exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

### III. DISCUSSION

Mings has alleged age discrimination in violation of KRS 344.040, which states that it is unlawful for an employer to "fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual . . . because of the individual's . . . age [of] forty (40) and over . . . ." KRS 344.010(1)(a). Kentucky courts have "consistently interpreted the civil rights provisions of KRS Chapter 344 consistent with applicable federal anti-discrimination law." *Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 495 (Ky. 2005) (citations omitted).

In the absence of direct evidence—which does not exist in this case—a plaintiff must satisfy the burden shifting test of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Williams*, 184 S.W.3d at 495. The *McDonnell Douglas* test requires Mings to first establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. Once a prima facie case is established the burden then shifts to Wal-Mart to articulate a legitimate, non-discriminatory reason for termination of the employee. *Williams* 184 S.W.3d at 496. Finally, once Walmart has expressed a non-discriminatory reason for termination, the burden then shifts back to Mings to establish that the reason for termination articulated by Wal-Mart is merely a pretext for discrimination. *Id.*

### A. <u>Mings has failed to establish a prima facie case of age discrimination.</u>

To prove a prima facie case of age discrimination, Mings must prove that he: "(1) was a member of a protected class, (2) was discharged, (3) was qualified for the position from which they were discharged, and (4) was replaced by a person outside the protected class." *Williams* 184 S.W.3d at 496 (citing *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 349 (6th Cir. 1997)). In this case there is no question that Mings was part of a protected class or that he was discharged. However, he has failed to present sufficient evidence to prove all elements of a prima facie case.

The Sixth Circuit has established that "[i]n order to be 'qualified' for [his] position, [a plaintiff] must demonstrate that [he] was meeting [his] employer's expectations and was performing to [his] employer's satisfaction." *Warfield v. Lebanon Corr. Inst.*, 181 F.3d 723, 729 (6th Cir. 1999) (citation omitted). In this case, Wal-Mart has provided evidence of a number of instances where Mings' performance was below expectation. The record shows as many as ten occasions, including six between 2010 and 2012, where Mings was coached for either poor performance or failure to comply with company policies. (Def.'s Mot. for Summ. J. Ex. 5). The record also indicates that Mings knew the content of these policies and that he admits to the conduct that violated these policies.

Bare assertions by Mings that he was performing satisfactorily will not suffice to carry his burden; he must establish evidence that "he was doing his job well enough to rule out the possibility that he was fired for inadequate job performance." *Kahl v. The Mueller Co.*, 173 F.3d 855, 1999 WL 196556, at *5 (6th Cir. 1999) (quoting *Town v. Mich. Bell Tel. Co.*, 568 N.W.2d 64, 69-70 (Mich. 1997)). Mings has failed to present evidence to establish that his job performance was satisfactory; in fact he admits that he was not in compliance with company policies. Because there is ample evidence of Mings failing to meet expectations and Mings has

failed to refute this evidence with anything more than his own assertions, he has failed to "rule out the possibility the he was fired for inadequate job performance." *Id.*

When the Plaintiff fails to establish evidence to support one of the essential elements of his claim, summary judgment in favor of the Defendant is appropriate. Thus, because Mings has failed to satisfy one of the necessary elements to establish a prima facie case of age discrimination summary judgment in favor of Wal-Mart is appropriate.

Moreover, summary judgment is appropriate because the record contains no evidence that Mings was replaced by a younger individual, another essential element of his prima facie case. In fact, Mings acknowledges that after he was terminated his job duties were absorbed by other employees. (Mings Dep. 154:17-155:15). The Sixth Circuit has established that Mings' inability to show that he was "*replaced* by a younger person because the duties of [his] job were absorbed by various people" is essentially fatal to his prima facie case. *Morrow v. Am. Bag Co.*, 23 F. App'x. 450, 454 (6th Cir. 2001). Mings must "offer 'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff [Mings] for discharge for impermissible reasons' by demonstrating that a 'comparable non-protected person was treated better.'" *Id.* at 455 (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998)). Mings has failed to present any such evidence. Again, Mings' failure to establish evidence to support an essential element of his prima facie case necessitates a grant of summary judgment in favor of Wal-Mart.

    **B.**    **Wal-Mart has articulated a legitimate, non-discriminatory reason for Mings' termination.**

Assuming that Mings has met his burden to establish a prima facie case, the burden then must shift to Wal-Mart to articulate a "legitimate nondiscriminatory reason" termination decision. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, (2000) (quoting *Tex.*

8

*Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, (1981)). "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Id.* (citation omitted).

As previously detailed, Wal-Mart enforces a progressive disciplinary entitled Wal-Mart's Coaching for Improvement Policy. This policy explicitly states that receiving four coachings or write-ups in a 12-month period is immediate grounds for termination. The uncontroverted evidence contained in the record shows that Mings received four coachings between February 2012 and August 2012 (Def.'s Mot. for Summ. J. Ex. 5 at 7-9); that Mings admits to the conduct that warranted these coachings (Mings Dep. 168:14-20); that Mings was aware that his conduct was in violation of company policies and warranted coaching (Mings Dep. 87:7-9, 93:20-22, 110:21-23); and finally that Mings was aware of Wal-Mart's four-strike termination policy. (Mings Dep. 85:14-86:3). Thus, Wal-Mart has successfully demonstrated a legitimate, non-discriminatory reason for Mings' termination.

    **C.** **Mings has not provided evidence to establish that Wal-Mart's stated reason for his termination were pretextual.**

Because Wal-Mart has articulated a legitimate, nondiscriminatory reason for Mings' termination the *McDonnell Douglas* test requires Mings to show that Wal-Mart's stated reason for termination is only a pretext for age discrimination. According to the Sixth Circuit, pretext may be established by evidence that "(1) the proffered reasons are false; (2) the proffered reasons did not actually motivate the decision; and (3) the plaintiff could show that the reasons given were insufficient to motivate the decision." *Manzer v. Diamond Shamrock Chems., Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

In the current case, Mings does not assert that the reason for his termination offered by Wal-Mart is false. In fact, as discussed extensively above, Mings admits that Wal-Mart's Coaching for Improvement Policy clearly states that an associate who is coached four times

9

within a 12-month period is subject to automatic termination. (Mings Dep. 14:12-15). Furthermore, Mings has acknowledged that the basis of his termination was the four write ups he received between February 2012 and August 2012. (Mings Dep. 100:4-11, 179:16-25). Finally, because Mings admits that Wal-Mart's Coaching for Improvement Policy subjects associates to automatic termination after a fourth write-up, it would be irrational to claim that Mings' four coachings were insufficient to motivate Wal-Mart's action. In fact, Mings makes no such claim and the record presents no evidence to support any inference other than that Wal-Mart's termination of Mings was in accordance with its explicit policy.

Mings has failed present any direct evidence of age discrimination. Furthermore, Mings has not presented evidence to support each essential element of his prima facie case. Mings has also failed to present any evidence to establish that Wal-Mart's legitimate proffered reason for his termination is a pretext for age discrimination, which warrants the entry of summary judgment in Wal-Mart's favor.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Wal-Mart Stores East LP's Motion for Summary Judgment (DN 17) is **GRANTED**.

**Greg N. Stivers, Judge**
**United States District Court**

July 1, 2015

cc: counsel of record

10